UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 2004-CR-10044-MLW

UNITED STATES

V.

EDWIN SERRANO, a/k/a/ "KING PSYCHO"

**ORDER ON DETENTION**

ALEXANDER, M.J.

The defendant, Edwin Serrano, appeared before this Court for a detention hearing on November 16, 2004, pursuant to an indictment charging him with violations of 21 U.S.C. § 841(a)(1) (distribution of cocaine and distribution of cocaine base ( "crack cocaine")). At the hearing, the government was represented by Assistant United States Attorney Peter Levitt and Mr. Serrano was represented by Attorney Roger Witkin. The government moved to detain Mr. Serrano pursuant to 18 U.S.C. §§ 3142 (f)(1)(C)(the offense carries a potential of ten or more years imprisonment pursuant to the Controlled Substances Act), (f)(1)(D)(criminal recidivism), and (f)(2)(A)(serious risk of flight).

During the detention hearing, the government presented the credible testimony of Special Agent Jeffrey Elliott Wood, Jr., a five-year veteran of the Federal Bureau of Investigation ("FBI"), as well as documentary evidence. The Court was also aided by a Pretrial Services Report ("PTS Report"). Special Agent Wood's credible testimony

includes the averments set forth below.

In 2003, Special Agent Wood was involved in an investigation of the Latin Kings street gang in Lawrence and Lowell, Massachusetts. With the assistance of a cooperating witness ("CW"), law enforcement agents investigating the Latin Kings made two drug purchases from Mr. Serrano, the first, for 7.2 grams of crack cocaine on February 27, 2003, and the second, for 7.0 grams of cocaine, on April 4, 2003. During Special Agent Wood's testimony, the government presented a videotape of both purchases, which took place in a van provided to the CW that was equipped with video and audio surveillance equipment.

Thereafter, pursuant to a February 19, 2004, indictment, a team led by Special Agent Wood went to Mr. Serrano's last known address, 41 Newbury Street, Apartment 14, in Lawrence, to arrest Mr. Serrano. The apartment was occupied by two women. After speaking with the women, as well as a third woman who lived in the apartment building, the team determined that Mr. Serrano was no longer at the apartment or in Massachusetts. Special Agent Wood subsequently learned that police in the Dominican Republic had arrested Mr. Serrano on drug charges in that country. Because Mr. Serrano was a United States citizen with outstanding warrants in the United States, the Dominican police expelled Mr. Serrano to Miami, and he was thereafter returned to Massachusetts.

Special Agent Wood also testified as to some of the evidence supporting the instant charges. In that an indictment is extant, probable cause exists to believe that Mr.

Serrano committed the offenses with which he is charged.  United States v. Vargas, 804 F.2d 157, 162-63 (1st Cir. 1986).  Accordingly, the Court need not set forth in detail that testimony and now turns to the detention calculus.

Pursuant to the Bail Reform Act of 1984, this Court shall detain a criminal defendant pending trial upon a determination that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. . . ." 18 U.S.C. § 3142 (e); United States v. Montalvo-Murillo, 495 U.S. 711, 716-17 (1990).  "With regard to risk of flight as a basis for detention, the Government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's appearance at future court proceedings."  United States v. DiGiacomo, 746 F. Supp. 1176, 1180-81 (D. Mass. 1990).  The burden of persuasion remains with the Government on the question of flight risk.  See DiGiacomo, 746 F. Supp. at 1181 (citing United States v. Jessup, 757 F. 2d 378, 381-82 (1st Cir. 1985)).

The issue of whether the defendant poses as a danger to the community has a different requirement.  The Government must prove by clear and convincing evidence that no combination of conditions will reasonably assure the safety of any other person and the community.  United States v. Chimurenga, 760 F.2d 400 (2d Cir. 1985).  The meaning of clear and convincing evidence does not imply that the judge be "plumb sure" that there is no set of conditions that will protect the public, but the judge should be

"pretty sure." United States v. Gray, 651 F. Supp. 432 (W.D. Ark. 1987), aff'd, 855 F.2d 858 (8th Cir.), cert. denied, 488 U.S. 866 (1988).

However, in cases involving violations of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, for which the defendant may be imprisoned for 10 or more years, there is a rebuttable presumption that there is "no condition or set of conditions [that] will reasonably assure the appearance of the person and the safety of any other person and the community." 18 U.S.C. § 3142(e). This rebuttable presumption operates to shift the burden of production, but not the burden of persuasion, to the defendant. See Jessup, 757 F.2d at 381. The rebuttable presumption reflects Congress's belief that narcotics traffickers have the resources and contacts to flee to other countries, and that they pose particular risks of recidivism if released pending trial. United States v. Arroyo-Reyes, 32 F.3d 561, 1994 WL 440654, at * 3 (1st Cir. 1994) (Table) (per curiam) (citing United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir 1987)); United States v. Williams, 753 F.2d 329, 335 (4th Cir. 1985). See also United States v. Portes, 786 F.2d 758, 765 (7th Cir. 1985). Nevertheless, because of the interference of pre-trial detention with the "importan[t] and fundamental . . . right" of liberty, United States v. Salerno, 481 U.S. 739, 750 (1987), this Court will not make such a finding lightly. The Court's independent analysis regarding detention is governed by the rubric set forth in 18 U.S.C. § 3142(g).

First, the Court looks to the nature and circumstances of the offense charged

against the defendant. It is beyond peradventure that the controlled substances at issue in this case, cocaine and crack cocaine, are a significant problem for this society.

Second, the Court looks to the weight of the evidence against the defendant. As noted previously, there is probable cause to believe that the defendant committed the offenses with which he is charged. Vargas, supra. The indictment and affidavits detail that evidence, which is not insignificant given the evidence gathered by surveillance and the cooperating witness.

The Court's third inquiry relates to the individual defendant. The PTS Report indicates that Mr. Serrano was born in Puerto Rico and has resided in Massachusetts since the age of approximately 15, but had been living in the Dominican Republic with his father for approximately 9 months prior to being expelled to the United States, as recounted above. Although Mr. Serrano's mother resides in Massachusetts, Mr. Serrano has no contact with her. The PTS Report also indicates that Mr. Serrano is in default in the Middlesex Superior Court related to his convictions in that court of indecent assault and battery on a child, robbery, and assault to rape. Mr. Serrano has other prior convictions as well, in Massachusetts, including one for drug-related charges.

Defense counsel contended that the Middlesex Superior Court default likely identifies a probation default or a failure to pay a fine, rather than an instance of failing to appear in court. He also noted that Katherine Morales, Mr. Serrano's girlfriend and the mother of his 22-month old daughter, has indicated that if Mr. Serrano were released on

bond, he could reside with her in Lawrence, Massachusetts, and that Mr. Serrano has an opportunity for employment.

The Court is not persuaded that this latter information is sufficient to guarantee Mr. Serrano's later appearances in court. Additionally, the Court is concerned by Mr. Serrano's criminal history. Mr. Serrano's record demonstrates that he presents a significant danger to the community by virtue of the facts charged against him here, and his past convictions and controlled substances violations. Moreover, he was living in the Dominican Republic when he was arrested.

After considering all evidence before the Court, and the presumption of 18 U.S.C. § 3142(e-f), the Court concludes by clear and convincing evidence that EDWIN SERRANO, a/k/a/ "KING PSYCHO", poses a danger to the community, and by a preponderance of the evidence that EDWIN SERRANO, a/k/a/ "KING PSYCHO", poses a risk of flight, neither of which can be vitiated by any condition or combination of conditions of release. Accordingly, the Court ORDERS him detained pending trial. Further, pursuant to 18 U.S.C. §3142( i) it is ORDERED that EDWIN SERRANO, a/k/a/ "KING PSYCHO",

1. be, and hereby is, committed to the Custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. be afforded reasonable opportunity for private consultation with his counselors; and

3. on Order of a court of the United States or on request of an attorney for the

government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

Review of this Order may be obtained by Mr. Serrano's filing of a motion for revocation or amendment of the Order pursuant to 18 U.S.C. § 3145 (b).

SO ORDERED.

| | |
|---|---|
| 11/19/04 | /S/ Joyce London Alexander |
| Date | United States Magistrate Judge |