```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA       )
                               )
              v.               )    Cr. No. 04-10044-MLW
                               )
EDWIN M. SERRANO, a/k/a        )
   "King Psycho",              )
   Defendant.                  )
```

**OPPOSITION OF THE UNITED STATES TO
DEFENDANT'S MOTION TO COMPEL EARLY DISCOVERY**

The United States, by its undersigned attorneys, opposes the defendant's motion to compel early disclosure and production of discovery materials. The defendant has filed what appears to be a stock motion requesting early discovery and production of informants, Jencks materials, Brady/Giglio material, Fed.R.Evid. 807 material (residual hearsay), Fed.R.Evid. 404(b), Fed.R.Evid 608(B), and Fed.R.Evid. 609 materials. There is nothing case specific in the defendant's motion. That is, the motion simply makes legal arguments as to why in certain cases disclosure *earlier* than that required under the federal rules governing discovery might be appropriate.

But defendant does not then tie these general principles to any facts *in this case* that make such disclosure warranted. In short, the local rules provide an orderly framework and timing for discovery of the things requested in the defendant's motion. In response to the defendant's discovery letter, the government advised the defendant that it intends to follow the timing requirements of the local rules. See Letter dated January 28,

2005 (the "January 28 Letter") (copy attached for convenience as Exhibit A). The defendant has not carried his burden of showing that somehow his case requires a different set of rules than those established in the federal rules.

   A.   BACKGROUND

   On December 9, 2004, the government provided the defendant with the automatic discovery required under Rule 116.1 of the Local Rules of the United States District Court for the District of Massachusetts. See Letter dated December 9, 2004 (the "December 9 Letter") (copy attached for convenience as Exhibit B). This included information, pursuant to L.R. 16(a)(1)(A), relative to all written, recorded, and oral statements by the defendant, including over 1,000 pages of FBI 302 reports, the DEA-7 laboratory reports of the drugs purchased from the defendant, and approximately 10 audio or video tape recordings involving the defendant. See Exhibit B.

   Although not required by Local Rule 116.1(C)(1)(d)(i), the government also produced the FBI-302 and other reports relating to the consensual recordings and other contacts with the defendant concerning the offenses described in the Indictment. ID. at 4.

   In its December 9 Letter, the government also advised the defendant, pursuant to L.R. 16(a)(1)(C), that all documents and tangible objects seized from the defendant were available for

2

review at the U.S. Attorney's Office.  Id. at 2.  Although not required by the local rules, the government also provided the defendant with early disclosure of the grand jury testimony (i.e., Jencks material), which totaled approximately 60 pages, of FBI Special Agent Mark Karangekis, the case agent in the Latin Kings investigation.  Id. at 3.  Although not required by the local rules, the government also disclosed search warrant materials (i.e., affidavits, applications, and returns) for search warrants that were executed against other defendants in the Latin King investigation.  Id. at 3.[1]

In its December 9 Letter, the government also identified alleged unindicted co-conspirators pursuant to L.R. 116.1(C)(1)(e).  Id. at 4 (the specific names of alleged unindicted co-conspirators have been excised on the publicly-filed copy of the December 9 Letter).  Pursuant to L.R. 116.1(C)(1)(f), the government's December 9 Letter also described

---

[1] This case arose from an eighteen-month investigation by the Federal Bureau of Investigation's ("the FBI's") North Shore Gang Task Force into drug trafficking and other suspected criminal behavior in the Lawrence and Lowell, Massachusetts area by members and associates of the Almighty Latin King Nation ("Latin Kings").  Over the course of the investigation, cooperating witnesses ("CW's") working for the FBI made approximately 30 purchases of heroin, cocaine and cocaine base from members and associates of the Latin Kings.  At the conclusion of the investigation, 21 members and close associates of the Latin Kings were charged, in separate indictments, with drug crimes (including Edwin Serrano, a/k/a "King Psycho"), 18 of whom were charged federally and 3 of whom were charged by the state.

3

any identifications that were made of the defendant during the course of the investigation.  <u>Id.</u> at 4-5.

The government's December 9 Letter also included a section describing required exculpatory evidence pursuant to L.R. 116.2. <u>Id.</u> at 6.  Finally, the government's December 9 Letter made a request for alibi information, to which the government has received no response.  <u>Id.</u>

    B.   <u>THE DEFENDANT'S MOTION</u>

Under L.R. 116.2(B)(2), all of the materials the defendant requests that the Court order the government to produce at this time are not required to be produced until, at the earliest, 21 days before trial.  <u>See</u> L.R. 116.2(B)(2).  This includes information tending to cast doubt on the credibility or accuracy of the government's witnesses of evidence, inconsistent statements of a witness, statements by any person that are inconsistent with a witness's statement, bias or prejudice, a written description of any prosecutable federal offense known to have been committed by a witness the government intends to call at trial, a written description of any conduct admissible under Fed.R.Evid. 608(b) committed by a witness the government intends to call at trial, and information known to the government of any mental or physical impairment of any witness the government intends to call at trial.  <u>Id.</u>

Notwithstanding the plain language of L.R. 116.2(B)(2) ("Not

4

later than twenty-one (21) days before the trial date established by the judge who will preside"), the defendant requests, without any individual showing as to why its necessary *in this case*, that the government be required to produce many of these items. The rule is based on a common sense and practical understanding of how trials and trial preparation proceed. In order to produce the materials requested by the defendant, the government would essentially have to start preparing for trial *now*. It generally takes multiple days of work time (over several weeks because often times the government has to send out letters or subpoenas requesting information) to prepare the 21 day discovery letter that the government sends to defense counsel prior to trial. The last such letter the undersigned prepared in connection with a trial was approximately 20 pages long.

It makes no sense for the government to undertake this arduous task as this stage in the case where the trial judge *has not even set a date for trial*. The nature of the information that is required to be disclosed would mandate that, if required to undergo this task at this time, the government would have to repeat the effort 21 days before trial (i.e., things can change with a witness in between now and 21 days before trial and it would be incumbent upon the government to ensure that its disclosed information was still accurate). This would be immensely inefficient. It is precisely for this reason that the

Local Rules require that this information be disclosed only once, 21 days before trial.

The defendant has not even attempted, much less shown, that his case merits special treatment under the Local Rules. The defendant has done nothing to show that, from a discovery perspective, his case is anything other than the run-of-the-mill case contemplated by the drafters of the Local Rules. This is not to suggest that the defendant's case is not important -- to him, the government, and the public interest. Like all federal criminal cases, it is. It is rather to suggest that this case, like the thousands that proceed through this federal court each year, can be fully and fairly addressed through the framework and orderly timing mechanisms contained in the Local Rules.

With respect to the defendant's request for <u>Jencks</u>, as previously noted, the government has already produced the grand jury testimony of Special Mark Karangekis (the case agent on the investigation) as well as over 1,000 pages of FBI 302 reports which may contain <u>Jencks</u>. Under the Jencks Act, statements of government witnesses are not required to be produced *until after they have testified*. 18 U.S.C. § 3500. The defendant's request for the production of <u>Jencks</u> at this stage is simply untenable, particularly where, as here, the defendant gives no justification for why this case requires special treatment.

With respect to the request for Fed.R.Evid 404(b) and 609 material, as explained in the government's January 28 Letter, the government's obligation is to provide this information at a reasonable time before trial, and the government has informed the defendant that it will do so.  January 28 Letter at 2-3.  <u>See also</u> <u>United States v. Tuesta-Toro</u>, 29 F.3d 771, 775 (1st Cir.1994) (noting that the government's obligation, upon proper request, is to provide the defense with notice of its intent to introduce Rule 404(b) information at a reasonable time before trial).  As noted, there is not even a trial date in this case.

With respect to the defendant's request for material under the residual hearsay exception, as noted in the January 28 Letter, the government objects to this request as seeking information that is not currently subject to disclosure under Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts, and declines to comply with this request at this time.  January 28 Letter at 2.  The defendant has offered no reason why such material should be disclosed in this case notwithstanding its non-inclusion in the federal rules governing discovery.

For the foregoing reasons, the defendant's motion should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


By:  /S/ PETER K. LEVITT
     PETER K. LEVITT
     Assistant U.S. Attorney

February 23, 2005

**EXHIBIT A**

U.S. Department of Justice

*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*          *United States Courthouse, Suite 9200*
                                          *1 Courthouse Way*
                                          *Boston, Massachusetts  02210*

January 28, 2005

BY FACSIMILE AND MAIL

Roger Witkin, Esq.
6 Beacon Street
Boston, MA 02108

>      Re:  United States v. Edwin Serrano;
>           Cr. No. 04-10044-MLW

Dear Mr. Witkin:

   I write in response to your discovery letter of January 18, 2005.  Your requests are addressed seriatim below.

   1.   The government has provided to you all documents that fall within the automatic disclosure requirements of Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts.  Other than what has already been provided, the government has no information responsive to this request.

   2.   The government has provided to you all documents that fall within the automatic disclosure requirements of Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts.  Other than what has already been provided, the government has no information responsive to this request.

9

3.  The government has provided to you all documents that fall within the automatic disclosure requirements of Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts.  Other than what has already been provided, the government has no information responsive to this request.

4.  The government has provided to you all documents that fall within the automatic disclosure requirements of Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts.  Other than what has already been provided, the government has no information responsive to this request.

5.  Local Rule 116.9 requires the preservation of particular documents until after trial, and the agents working on this investigation are aware of their obligations under that Local Rule.  To the extent that these documents contain information subject to disclosure under Local Rule 116.2(B)(2), that information will be disclosed 21 days before trial.  <u>See also</u> <u>United States v. Ruiz</u>, 536 U.S. 622 (2002).  The government declines to comply with this request at this time.

6.  <u>Residual Hearsay Exception</u>

    The government objects to this request as seeking information that is not currently subject to disclosure under Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts, and declines to comply with this request at this time.

7.  <u>FRE 404(b)</u>

    The government objects to this request as seeking information that is not currently subject to disclosure under Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts, and declines to comply with this request at this time.  Upon proper request reasonably before trial, the government will provide information regarding any Rule 404(b) information it intends to introduce at trial.  <u>See</u> <u>United States v. Tuesta-Toro</u>, 29 F.3d 771, 775 (1st

10

   Cir.1994) (noting that the government's obligation,
   upon proper request, is to provide the defense with
   notice of its intent to introduce Rule 404(b)
   information at a reasonable time before trial).

8. <u>FRE 608(b)</u>

   The government objects to this request as seeking
   information that is not currently subject to disclosure
   under Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2
   of the Local Rules of the United States District Court
   for the District of Massachusetts, and declines to
   comply with this request at this time.  Upon proper
   request reasonably before trial, the government will
   provide information regarding any Rule 608(b)
   information it intends to introduce at trial.  <u>See</u>
   <u>United States v. Tuesta-Toro</u>, 29 F.3d 771, 775 (1st
   Cir.1994) (noting that the government's obligation,
   upon proper request, is to provide the defense with
   notice of its intent to introduce Rule 404(b)
   information at a reasonable time before trial).

9. <u>FRE 609</u>

   The government objects to this request as seeking
   information that is not currently subject to disclosure
   under Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2
   of the Local Rules of the United States District Court
   for the District of Massachusetts, and declines to
   comply with this request at this time.  Upon proper
   request reasonably before trial, the government will
   provide information regarding any Rule 609(b)
   information it intends to introduce at trial.  <u>See</u>
   <u>United States v. Tuesta-Toro</u>, 29 F.3d 771, 775 (1st
   Cir.1994) (noting that the government's obligation,
   upon proper request, is to provide the defense with
   notice of its intent to introduce Rule 404(b)
   information at a reasonable time before trial).

Please do not hesitate to call me if you have any questions about this or any other matter.

            Very truly yours,

            MICHAEL J. SULLIVAN
            United States Attorney


      By: _____
         PETER K. LEVITT
         Assistant U.S. Attorney


cc: Rex Brown, Courtroom Clerk to the Honorable Joyce London Alexander

**EXHIBIT B**

**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*              *United States Courthouse, Suite 9200*
                                              *1 Courthouse Way*
                                              *Boston, Massachusetts  02210*

December 9, 2004

BY HAND

Roger Witkin, Esq.
6 Beacon Street
Boston, MA 02108

       Re:   United States v. Edwin Serrano a/k/a "King
             Psycho"; Cr. No. 04-10044-MLW

Dear Mr. Witkin:

     Pursuant to Rule 116.1 of the Local Rules of the United States District Court for the District of Massachusetts, the government hereby provides you with the following automatic discovery in the above-referenced case:

A.    Rule 16 Materials

1.    Statements of Defendant under Rule 16(a)(1)(A)

    a.    Written Statements

     There are no relevant written statements of the defendant Edwin Serrano, a/k/a "King Psycho" (hereinafter referred to as "the defendant") in the possession, custody, or control of the government.

    b.    Recorded Statements

     Consensual audio and video tape-recordings were made of personal meetings and telephone conversations involving the

13

defendant and a cooperating witness ("CW-4") as is indicated in the index attached as Exhibit 1. These tapes are available for your review and a copy of them is being prepared and will be forwarded. A copy of the audiotapes will also be sent to the institution at which the defendant is being held in accordance with LR 116.4.

To date, draft transcripts of these tapes have not been prepared. However, summaries of some of the recorded conversations have been prepared as part of Bates Number documents 1-1172, which were previously provided to you at the detention hearing in this matter.

    c.    <u>Grand Jury Testimony of the defendant</u>

The defendant did not testify before the grand jury. Nor am I aware of any other statements made by him to law enforcement agents other than answers to the standard booking questions that would have been posed to him after his arrest or as may be referenced in the reports produced in this action. If I become aware of any such additional statements, I will advise you at once.

    d.    <u>Oral Statements to then Known Government Agents</u>

Other than booking statements referenced in the preceding paragraph and other statements that may be referenced in the reports produced in this matter, I am presently unaware of any oral statements made by the defendant before or after arrest, in response to interrogation by a person then known by the defendant to be a government agent, which the government intends to use at trial. If I become aware of any such statements, I will advise you at once.

2.    <u>Defendant's Prior Record under Rule 16(a)(1)(B)</u>

I understand that you received a copy of the prior criminal record of the defendant from Pretrial Services. Please contact me if you need a duplicate copy.

3.    <u>Documents and Tangible Objects under Rule 16(a)(1)(C)</u>

All books, papers, documents and tangible items that are within the possession, custody, and control of the government, and which are material to the preparation of the defendant's defense, or are intended for use by the government as evidence in chief at the trial of this matter, or were obtained from or belong to the defendant, may be examined by contacting the

undersigned Assistant United States Attorney and making an appointment to view the same at a mutually convenient time.

4. <u>Reports of Examinations and Tests under Rule 16(a)(1)(D)</u>

Copies of the DEA-7 laboratory reports relating to the drugs purchased from the defendant have been produced. Any additional laboratory reports received after the date of this letter will be forwarded to you when the are available.

Should we be unable to reach a stipulation as to the results of the examination of the drugs seized in this case, the government plans to offer testimony concerning the results of the laboratory analysis of the drug exhibits (i.e., that they are, respectively, cocaine and cocaine base) and testimony from the case agent or another qualified law enforcement agent that the one of the drugs is that particular from of cocaine base known as crack cocaine. That testimony will be based on the agent's training and experience and his inspection of the color, appearance, texture, and/or odor of the drugs purchased form the defendant. The basis for such an opinion is more fully described in the grand jury testimony of S/A Mark Karangekis (Bates Number documents 1029-1089) that was previously provided.

B. <u>Search Materials under Local Rule 116.1(C)(1)(b)</u>

No search warrants were conducted of property belonging to the defendant in this case. Any items seized from the defendant at the time of his arrest may be examined by appointment in accordance with paragraph 3, above and a copy of any agency reports describing any inventory search will be provided to you upon receipt by this office. Search warrant materials concerning other searches in other cases are attached as Bats Numbered documents 1090-1172 that were previously provided. Returns for those warrants (and reports summarizing the searches) will be provided under separate cover.

The government is not in possession of reports related to the seizures of evidence in this case that it anticipates offering in its case-in-chief beyond those items otherwise described in this letter.

C. <u>Electronic Surveillance under Local Rule 116.1(C)(1)(c)</u>

No oral, wire or electronic communications of your client were intercepted by the government in connection with this case pursuant to 18 U.S.C. §§ 2510-2518.

D.   Consensual Interceptions under Local Rule 116.1(C)(1)(d)

As discussed above, this case involved the use of consensual monitored meetings and conversations that were recorded. Although summaries of some conversations have been prepared (and, as is indicated above, have been produced), no formal transcripts of these tapes (either draft or final) are presently available. Any such transcripts that are prepared will be made available to you in accordance with Local Rule 116.4(B). Although not required by Local Rule 116.1(C)(1)(d)(i), the government has also produced the FBI-302 and other reports relating to these consensual recordings and other contacts with the defendant concerning the offenses described in the Indictment. These reports are included in Bates Number documents 1-1028 previously provided to you.

E.   Unindicted Coconspirators under Local Rule 116.1(C)(1)(e)

The reports and the detention affidavit previously produced in this matter indicate that the Almighty Latin Kings/Queens Nation operating in Lawrence and Lowell Massachusetts is a cohesive organization that has as one of its institutional objectives the promotion and protection of drug trafficking by its members. The Latin Kings chapters in Lawrence and Lowell, Massachusetts benefits from the drug trafficking of its members. The government alleges that the gang also required its members to undertake "missions" (including acts of violence) when its geographic primacy in specified areas was threatened by competing drug traffickers and would police drug dealing by its members who cheated other Latin Kings in drug transactions.

The government alleges that the defendant was a member of the Latin Kings and that he was therefore aware of these policies and was involved in (and benefitted from) their implementation and execution in concert with other leaders and senior members of the Almighty Latin King/Queen Nation to include the following individuals, among others:

**REDACTED**


Other individuals that the government alleges the defendant conspired with in the distribution of drugs and/or the exercise of geographic and other control over members and associates of the Latin Kings are also described in the documents previously produced and include

**REDACTED**

Further information regarding these individuals and other possible unindicted co-conspirators can be found in the reports previously produced in this matter.

F.   Identifications under Local Rule 116.1(C)(1)(f)

There were several kinds of identification procedures used in the course of this investigation.  In addition to traditional photographic arrays and identifications made by surveillance agents who were personally familiar with targets of the investigation, agents working on the case frequently reviewed videos of controlled purchases and compared the image of the individual on the video to booking or other photographs of suspected targets.  All such procedures of which I am aware are described in the police reports previously produced.  All videos taken in this case will be made in accordance with the procedures described below.

As indicated in the report Bates Numbered 100, previously provided to you, on February 5, 2003, CW-4 mistakenly identified LOUIS RAMIREZ, whom he knew only as "KING PSYCHO", from a photo array as the person from whom he had bought drugs on February 5, 2003, when, in fact, CW-4 had bought the drugs from EDWIN SERRANO, A/K/A "KING PSYCHO".  LOUIS RAMIREZ'S alias is "KING LITTLE PSYCHO".  As indicated in the report, Lawrence Police Detective Richard Brooks and Massachusetts State Trooper Frank Montanez saw the defendant on February 5, 2003 and thought he was LOUIS RAMIREZ, A/K/A "KING PSYCHO".

As indicated in the reports Bates Numbered 162 and 167, after CW-4 made a controlled buy of crack cocaine from the defendant on April 4, 2003, CW-4 and the defendant were stopped in CW-4's car by one of the Lawrence Police Officers providing surveillance.  The defendant provided the officer with identification in the name of EDWIN SERRANO, born 2/19/76, former address 158 Water Street, Apartment 10, Lawrence Massachusetts, current address 71 Newbury Street, Apartment 14, Lawrence, Massachusetts.  As indicated in the reports Bates Numbered 162 and 167, CW-4 was subsequently shown a photographic array and identified EDWIN SERRANO as "PSYCHO", the person from whom he had made the prior  controlled purchases of drug evidence (CW-4 did not begin making controlled drug purchases from LOUIS RAMIREZ, A/K/A "KING LITTLE PYSCHO", until May 2003).  FBI Special Agent

Mark Karangekis and Lawrence Police Detective Richard Brooks reviewed RMV and mug shot photographs of the defendant and identified him as the same person who was on videotape selling drugs to CW-4.

Apart from these procedures, and as may be indicated in the documents produced to date, I have no information indicating that the defendant was the subject of an investigative identification procedure used with a witness the government anticipates calling in its case-in-chief involving a line-up, show-up, photo-spread or other display of an image of the defendant. In the event I become aware that such a procedure was used, I will advise you at that time and will provide you with copies of any tangible evidence reflecting, used in or memorializing the identification procedures.

G.   <u>Exculpatory Evidence under Local Rule 116.2</u>

With respect to the government's obligation under Local Rule 116.2(B)(1) to produce "exculpatory evidence" as that term is defined in Local Rule 116.2(A), the government states as follows:

1.   The government is aware of no evidence that would tend directly to negate the defendants' guilt concerning any count in the Indictment.

2.   The government is aware of no information that would cast doubt on the admissibility of evidence that the government anticipates offering as part of its case-in-chief and that could be subject to a motion to suppress or exclude.

3.   The drug purchases made from the defendant in this case were made by CW-4. Other than CW-4, no promises, rewards, or inducements have been given to any witness whom the government presently anticipates calling as part of its case-in-chief.

Prior to the date of this letter, CW-4 received $2,900 from the FBI in connection with its involvement in this and other investigations. This total includes payments for expenses.

In addition to these payments, additional rewards, payments, and inducements were given to CW-4 in that law enforcement officials helped obtain a job for CW-4 as a mail loader for a commercial entity. CW-4 showed up for the first day of work but did not take the job.

Pursuant to Local Rule 116.6(A), the government declines to disclose at this time the identity of CW-4. The government

believes that such a disclosure would be detrimental to the interests of justice.  The government takes the position that the exposure of the identity of CW-4 would put its safety and the safety of its family in jeopardy.  The government is prepared to identify CW-4 at a reasonable time before trial.

4.   Other than CW-4, the government is unaware that any of its named case-in chief-witnesses has any criminal record or criminal cases pending.  A redacted copy of the criminal record of CW-4 is attached as Exhibit 2.

5.   As indicated, CW-4 and law enforcement officers originally incorrectly identified the defendant as LUIS RAMIREZ.  Other than as indicated herein, and as may be indicated in the attached reports, no named percipient witness failed to make a positive identification with respect to the crimes described in the indictment.

H.   Other Matters

The government recognizes that its duty of disclosure and discovery as set forth in Local Rule 116 and Rule 16 of the Federal Rules of Criminal Procedure is a continuing one.  In addition, please consider this letter to be a request for reciprocal discovery pursuant to Local Rule 116.1(D) and Fed. R. Crim. P. 16(b).  I request that you provide a written response to my request for reciprocal discovery within 10 days of receipt of this letter.

I.   Request for Alibi Information

According to the government's evidence, meetings and or conversations took place with the defendant on the following dates and times.

| Date | Time (apprx) | Location | Participating def's |
|---|---|---|---|
| 2/5/03 | | 158 Water Street, Lawrence | Edwin Serrano |
| 2/6/03 | 10 p.m. | 158 Water Street Lawrence | Edwin Serrano |
| 2/11/03 | 7:30 p.m. | 158 Water Street, Lawrence | Edwin Serrano |

| | | | |
|---|---|---|---|
| 2/27/03 | 8:55 p.m. | Newbury & Summer Streets, Lawrence | Edwin Serrano |
| 4/4/03 | 8:38 p.m.--9:15 p.m. | Newbury & Summer Streets (71 Newbury Street), Lawrence | Edwin Serrano |

Pursuant to Fed. R. Crim. P. 12.1, the government hereby requests notice of any intention to offer an alibi defense to the charged offense or any of the above-captioned meetings or conversations.

If you have any questions about any of this information or wish to discuss this case, please call us at (617) 748-3100.

                                        Very truly yours,

                                        MICHAEL J. SULLIVAN
                                        United States Attorney

By: _____
    JOHN A. WORTMANN, JR.
    PETER K. LEVITT
    Assistant U.S. Attorneys

enclosures

cc (w/out encl.):    Rex Brown, Courtroom Clerk to Magistrate Judge Joyce London Alexander (with information regarding co-conspirators redacted)